UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

ZEN ALLDREDGE,

Defendant.

23 Cr. 537 (JPC)
25 Civ. 1261 (JPC)

OPINION AND ORDER

JOHN P. CRONAN, United States District Judge:

After pleading guilty to conspiracy to commit money laundering, Zen Alldredge was sentenced to thirty months' imprisonment and was ordered to pay forfeiture and restitution, each in the amount of approximately $2.5 million. Alldredge now moves under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, arguing that the Government illegally searched his items and coerced his statements, engaged in bad-faith and coercive plea discussions, and committed prosecutorial misconduct by overcharging him. Alldredge, however, waived his ability to make those arguments in his plea agreement and, in any event, they lack merit. So the Court denies Alldredge's motion.

## I. Background

In 2020 and 2021, Alldredge laundered about $2.5 million of proceeds that had been stolen from victims of a "boiler room," a fraudulent scheme in which participants posing as investment brokers use high-pressure sale techniques to trick victims into buying worthless or non-existent securities. Dkt. 27 ("PSR") ¶ 8.[1] Alldredge laundered that money by moving it through a series

[1] Except where otherwise indicated, all docket citations refer to the docket in the underlying criminal matter, *United States v. Alldredge*, No. 23 Cr. 537 (JPC) (S.D.N.Y.).

of transactions involving shell companies, cryptocurrency, and property purchases. *Id.* ¶ 9. The $2.5 million was laundered in two parts. As for the first $2 million, Alldredge received from a co-conspirator a cashier's check of fraud proceeds which Alldredge deposited in a Nevada bank account that he had opened. *Id.* ¶¶ 10-12. Alldredge then transferred over $1.1 million from that account into a New York bank account that he also had opened and made various transactions out of both accounts which showed an intent to conceal the money. *Id.* ¶¶ 12-14. The latter, almost $500,000 was received directly from victims and then sent to conspirators overseas. *Id.* ¶ 15.

In October 2023, Alldredge was indicted by a grand jury in this District and charged with one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Dkt. 2 ("Indictment") ¶¶ 1-3. That charge carried a maximum sentence of twenty years in prison. *See* 18 U.S.C. § 1956(a). The Indictment included a forfeiture allegation which identified six specific assets alleged to have been involved in the offense or traceable to property involved in the offense. Those assets were: (1) $203,000 seized from a Nevada account held in the name of Alldredge's fictitious business; (2) $240,000 in cash seized from Alldredge's safety-deposit box in Beverly Hills, California; (3) miscellaneous precious metals seized from that safety-deposit box; (4) real property in Minden, Nevada; (5) real property in Celebration, Florida; and (6) real property in Hawthorne, Nevada. Indictment ¶ 4; *see also* PSR ¶¶ 13-14.

On April 11, 2024, Alldredge waived indictment and pleaded guilty to a one-count superseding Information pursuant to a plea agreement with the Government. Dkt. 19 ("Information"); Dkt. 46, Exh. 1 ("Plea Agreement"). The Information also alleged a conspiracy to commit money laundering, but charged a conspiracy in violation of 18 U.S.C. § 371, rather than in violation of 18 U.S.C. § 1956(h) as originally charged in the Indictment. Information ¶¶ 1-3. The superseding charge carried a maximum sentence of five years in prison. *See* 18 U.S.C. § 371.

And the Information's forfeiture allegation excluded the precious metals in Alldredge's safety-deposit box. *Compare* Information ¶ 4 *with* Indictment ¶ 4.

Under the terms of the Plea Agreement, the parties stipulated to a range under the United States Sentencing Guidelines of thirty to thirty-seven months' imprisonment, and Alldredge admitted a forfeiture allegation of $2,552,432.13—which "represent[ed] property involved in [the] offense," corresponding to the five categories of assets in the Information. Plea Agreement at 1-3. Alldredge agreed that he would neither "file a direct appeal[] nor bring a collateral challenge . . . under Title 28, United States Code, Section 2255 . . . of any sentence within or below the Stipulated Guidelines Range of 30 to 37 months' imprisonment." Plea Agreement at 5. He further "agree[d] not to appeal or bring a collateral challenge of any forfeiture amount or restitution amount that is less than or equal to $2,552,432.13." *Id.* And he "waive[d] the right" to discovery materials under Federal Rule of Criminal Procedure 16, "agree[ing] not to withdraw [his] plea or to attack [his] conviction or sentence, either on direct appeal or collaterally, on the ground that the Government has failed to produce any such information, apart from any information establishing [his] factual innocence." *Id.* Ultimately, Alldredge acknowledged that he "accepted th[e] Agreement and decided to plead guilty because [he] is in fact guilty." *Id.*

This Court allocuted Alldredge as to the superseding Information and the Plea Agreement on April 11, 2024. *See* April 11, 2024 Minute Entry; Dkt. 46, Exh. 2 ("Plea Tr."). After placing Alldredge under oath, the Court first confirmed Alldredge's competence to waive his right to be indicted by a grand jury and to enter an informed plea of guilty. Plea Tr. at 5:7-8:4. Alldredge then waived indictment, with this Court finding that such waiver was "made freely, intelligently, knowingly, and voluntarily." *Id.* at 8:5-11:20. The Court then walked Alldredge through the trial rights he would be relinquishing by pleading guilty. *Id.* at 12:1-16:3. Among other things,

Alldredge confirmed that he had the opportunity to "discuss with [his] attorneys whether there is a basis to seek suppression of some or all of the evidence that the government has against [him] on the grounds that [his] constitutional rights were violated," and his understanding that if he "plead[ed] guilty, [he] would be giving up [his] right to seek suppression of any of the evidence against [him]." *Id.* at 14:4-12. He also stated that he understood that by pleading guilty, there would "be no appeal with respect to whether the government can use the evidence it has against [him]" or "whether [he] did or did not commit the crime alleged in the superseding information." *Id.* at 14:24-15:14, 16:1-3.

As for the Plea Agreement, Alldredge confirmed that he had read it, discussed it with his attorneys, and "fully underst[ood]" it before signing it. *Id.* at 16:4-21. Specifically, Alldredge confirmed understanding that under the Plea Agreement, he was "admitting the forfeiture allegation with respect to Count One of the superseding information" and "agree[ing] to forfeit to the United States a sum of money equal to $2,552,432.13 in U.S. currency representing property involved in the said offense and all right, title, and interest that [he] ha[d] as to specific property," which were the five categories of assets in the Information. *Id.* at 20:4-22:1. He also acknowledged having read, understood, and signed a consent forfeiture order in which he "would be consenting to [the Court] entering a money judgment with respect to the amount that [the Court] mentioned . . . and also a judgment with respect to the specific property" the Court listed. *Id.* at 22:2-23:3. Alldredge understood that he had "agreed not to appeal or [collaterally] challenge any forfeiture that is less than or equal to $2,552,432.13." *Id.* at 28:9-13. He further acknowledged having reached a binding agreement with the Government "as to the applicable guideline range of 30 to 37 months," *id.* at 25:7-27:18, and understanding that he had "waive[d] [his] right to appeal or otherwise challenge, such as a collateral challenge like a *habeas* petition, any sentence that

entails a term of imprisonment that is 37 months or less," *id.* at 27:19-28:2. Alldredge confirmed that nothing had been left out of the Plea Agreement, that the Agreement constituted his "complete and total understanding" of the bargain reached with the Government, that other than the Agreement no promises or offers of inducement had been made to get him to plead guilty, and that no one threatened him or forced him to plead guilty and sign the Agreement. *Id.* at 29:1-29:17. And he further confirmed that he was satisfied with his attorneys' representation of him in the case. *Id.* at 29:18-20.

Alldredge then admitted, in his own words, what he did that made him "believe" he was "guilty of Count One of the superseding information":

> From May 2020 to April '21, I agreed with another person to conduct a financial transaction involving funds I understood to be proceeds of unlawful activity. I knew the transaction was designed to conceal the sources of those funds.
>
> On or about November 25, 2020, I wired [$]150,000 representing illegal proceeds from an account in Nevada State Bank to an account at J.P. Morgan. And at the time I knew what I was doing was wrong.

*Id.* at 29:21-30:8. Alldredge affirmed that he "engage[d] in this activity with others who were also involved in the same scheme" and reiterated that he "understood the funds to be proceeds of illegal activity." *Id.* at 30:9-16. That illegal activity, the Government proffered, was "wire fraud," which Alldredge and his counsel did not contest. *Id.* at 30:17-31:19.

Following his admission and the Government's proffer, Alldredge pleaded guilty to Count One of the Information and admitted the forfeiture allegation in the Information. *Id.* at 34:3-8. Having concluded the allocution, the Court accepted Alldredge's guilty plea and entered a judgment of guilty on the Information's sole count. *Id.* at 34:9-17. Later that day, the Court entered a Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment, which was referenced in the Plea Agreement and signed by the parties. Dkt. 21.

Alldredge's sentencing was held on September 10, 2024. Dkt. 46, Exh. 3 ("Sentencing Tr."). Aldredge confirmed having reviewed the Presentence Investigation Report and discussed it with his attorneys. *Id.* at 4:22-5:13. His only objection to that Report was being characterized at one point as a "money launderer"; because he pleaded "to a conspiracy and not to substantive money laundering," he instead preferred language indicating that he had "participated in a money laundering conspiracy." *Id.* at 5:20-6:25; *see* PSR ¶ 8.[2] Alldredge had no other objections to the factual recitations in the Report, Sentencing Tr. at 7:1-3, which laid out the circumstances under which he committed the conspiracy to launder money, PSR ¶¶ 8-15. After calculating the Guidelines range in the same way as the parties did in the Plea Agreement, Sentencing Tr. at 7:18-9:19, the Court sentenced Alldredge to a bottom-of-the-Guidelines term of thirty months' imprisonment, to be followed by two years' supervised release, and ordered restitution to the victims whose money he laundered[3] and the agreed-upon forfeiture. *Id.* at 49:6-57:17.

On February 10, 2025, Alldredge filed a *pro se* motion under Section 2255 to vacate, set aside, or correct his sentence. Dkt. 36 ("Motion"). His motion sets forth three grounds for relief. First, Alldredge claims that his Fourth, Fifth, and Sixth Amendment rights were violated through unlawful searches and seizures of his cell phones and lock box, along with coerced statements; these violations, he argues, "contributed to sentencing errors, resulting in an inflated sentencing guideline range and an unjust sentence." *Id.* at 4, 15-17. Second, he claims that the Government engaged in bad-faith plea negotiations "by intentionally conditioning the continuation of

[2] In response to that objection, the Court revised the first part of the relevant sentence of the Presentence Investigation Report to read: "Zen Alldredge participated in a money laundering conspiracy while based in California and Nevada, and in 2020 and 2021 laundered approximately $2.5 million of proceeds . . . ." Sentencing Tr. at 6:18-23; *see* PSR ¶ 8. Neither party objected to that modification. Sentencing Tr. at 6:24-25.

[3] On May 7, 2025, the Court entered an Order of Restitution, requiring Alldredge to pay restitution in the amount of $2,497,992.40. Dkt. 42.

negotiations on not having to turn over critical discovery documents," which he says—combined with "threats of escalating charges and severe penalties"—forced him to make "an uninformed decision to accept the plea deal." *Id.* at 5, 19-20. And third, he claims that the Government overcharged him with conspiracy to commit money laundering because there was no "factual support" for such a charge, which led to a "gross misapplication of the sentencing guidelines." *Id.* at 7, 22-23.

The Government filed its opposition to Alldredge's motion on June 4, 2025. Dkt. 46 ("Opposition"). On June 24, 2025, the Government purported to serve Alldredge with its opposition papers, Dkt. 48, but Alldredge filed a letter with the Court on August 11, 2025, claiming that he had not received an opposition from the Government, Dkt. 7, No. 25 Civ. 1261 (JPC) (S.D.N.Y.). The Court then ordered the Government to re-serve Alldredge on August 14, 2025, giving Alldredge thirty days from the date on which he was served to reply. Dkt. 49. Alldredge received service of the Government's opposition on August 25, 2025, which rendered his reply due on September 24, 2025. Dkts. 50, 51. To date, Alldredge has not filed a reply.

## II. Legal Standard

Under 28 U.S.C. § 2255(a), a prisoner in custody for a federal sentence may move for his sentence to be vacated, set aside, or corrected on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The prisoner may gain such relief "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424,

428 (1962)); *accord Lanier v. United States*, Nos. 15 Cr. 537 (VEC), 23 Civ. 4939 (VEC), 2024 WL 1715236, at *2 (S.D.N.Y. Apr. 22, 2024). The Court must also "construe *pro se* pleadings liberally and interpret them 'to raise the strongest arguments [that] they *suggest*.'" *Rahmankulov v. United States*, Nos. 23 Civ. 3206 (RA), 20 Cr. 653 (RA), 2023 WL 3303949, at *1 (S.D.N.Y. May 8, 2023) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

In resolving a motion under Section 2255, the district court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez*, 722 F.3d at 131. In this case, and for reasons that follow, the Court determines that "[t]he combined submissions of the parties provide a sufficient basis upon which to deny the [motion], and the Court concludes that a full testimonial evidentiary hearing would not offer any reasonable chance of altering its views on the facts alleged by" Alldredge. *Pinhasov v. United States*, Nos. 16 Civ. 7349 (KBF), 14 Cr. 670 (KBF), 2018 WL 550611, at *2 (S.D.N.Y. Jan. 22, 2018) (citing *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001)). An evidentiary hearing therefore is not necessary to resolve Alldredge's motion. *See Camacho v. United States*, Nos. 17 Civ. 1440 (KBF), 13 Cr. 58 (KBF), 2018 WL 357312, at *1 n.1 (S.D.N.Y. Jan. 10, 2018) ("[T]he petition raises no factual dispute and can thus be resolved without a Government response and/or hearing.").

## III. Discussion

The Court first explains why all three of Alldredge's alleged grounds for relief are waived, before explaining why, in any event, each fails on the merits.

### A. Alldredge Waived His Collateral Attacks in the Plea Agreement.

In his Plea Agreement, Alldredge expressly waived the grounds for relief he now pursues under Section 2255. Specifically, he agreed that he would "not . . . bring a collateral challenge . . . under . . . Section 2255 . . . of any sentence within or below the Stipulated Guidelines Range of 30 to 37 months' imprisonment," which—having been sentenced to thirty months' imprisonment—is exactly what he received. Plea Agreement at 5. Yet his first and third grounds for relief—based on the use of allegedly unconstitutional evidence and overcharging without factual support, respectively—specifically claim "an inflated sentencing guideline range and an unjust sentence." Motion at 4, 7. Alldredge further agreed to "waive[] the right" to Rule 16 discovery disclosures and to "not . . . attack [his] conviction or sentence, either on direct appeal or collaterally, on the ground that the Government has failed to produce any such information, apart from any information establishing [his] factual innocence." Plea Agreement at 5. But his second ground for relief specifically claims that the Government coercively "condition[ed] the continuation of negotiations on not having to turn over critical discovery documents," which "pressured [him] into making an uninformed decision to accept the plea deal." Motion at 5. And while that ground also mentions "threats of escalating charges and severe penalties," *id.*, Alldredge not only agreed to a waiver applicable to the imposed term of imprisonment, but he also agreed not to "bring a collateral challenge of any forfeiture amount or restitution amount that is less than or equal to $2,552,432.13," Plea Agreement at 5, which is the exact amount he ultimately was ordered to forfeit and slightly greater than the amount he was ordered to pay in restitution. Alldredge's collateral challenges, in short, run headlong into the express terms of the Plea Agreement, in which he agreed to waive such challenges.

"A waiver of the right to collaterally attack a conviction is presumptively enforceable." *Cook v. United States*, 84 F.4th 118, 122 (2d Cir. 2023). Courts "will not enforce" a "plea agreement's collateral-attack waiver" in "only five circumstances": "(1) where the waiver was not made knowingly, voluntarily, and competently; (2) where the sentence was based on constitutionally impermissible factors, such as ethnic, racial, or other prohibited biases; (3) where the government breached the agreement containing the waiver; (4) where the district court failed to enunciate any rationale for the defendant's sentence; and (5) where the waiver was unsupported by consideration." *Id.* at 121-22 (citation modified).

Here, Alldredge does not argue that his sentence was based on constitutionally impermissible factors, that the Government breached the Plea Agreement, or that this Court failed to articulate any rationale for his sentence. While he gestures at having made "an uninformed decision to accept the plea deal" based on the Government not having to "turn over critical discovery documents," Motion at 5, the Plea Agreement expressly contemplated that "if not for entering this plea of guilty, the Government would be required to produce Rule 16 material" and that Alldredge nevertheless "acknowledge[d] that [he] ha[d] not and w[ould] not receive such information because [he] ha[d] decided to plead guilty, waive[d] the right to this information, and agree[d] not to . . . attack [his] conviction or sentence . . . collaterally[] on the ground that the Government ha[d] failed to produce any such information," Plea Agreement at 5.[4] Nor does Alldredge's allegation of "financial coercion" based on forfeiture hold sway, Motion at 19, as in

[4] While Alldredge did not waive challenging the Government's non-disclosure of "any information establishing [Alldredge's] factual innocence," Plea Agreement at 5, he points to no withheld information that would help establish his factual innocence, instead raising the cursory argument that he had been "denied the opportunity to properly evaluate the evidence, including key documents that could have led to a dismissal or reduction in charges," Motion at 19.

the Plea Agreement he "also agree[d] not to . . . bring a collateral challenge of any forfeiture amount . . . that is less than or equal to $2,552,432.13," Plea Agreement at 5.

At his plea allocution, Alldredge acknowledged that no one had "threatened [him] or forced [him] to plead guilty or sign the agreement." Plea Tr. at 29:12-14; *see also id.* at 20:4-23:3 (admitting the forfeiture allegation and acknowledging voluntarily signing the consent forfeiture order). Such testimony, which was made under oath, *id.* at 5:7-9, "carries" a "strong presumption of accuracy," and—in the absence of "a substantial reason to find otherwise"—the Court "discredit[s]" Alldredge's "later self-serving and contradictory [assertion] as to whether [his] plea was knowingly and intelligently made." *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001). Under these circumstances, then, Alldredge "knowingly and voluntarily agreed to the collateral attack waiver." *Sanford v. United States*, 841 F.3d 578, 581 (2d Cir. 2016) (*per curiam*); *see also Garcia-Santos v. United States*, 273 F.3d 506, 508 (2d Cir. 2001) (*per curiam*) (describing similar circumstances which supported the determination that the defendant's "plea agreement was entered into knowingly and voluntarily, and with awareness of his waiver of appeal and collateral attack").

Alldredge's collateral-attack waiver was also clearly supported by consideration. A plea agreement is unsupported by consideration where the defendant "received no benefit from his plea beyond what he would have gotten by pleading guilty without an agreement." *United States v. Lutchman*, 910 F.3d 33, 37 (2d Cir. 2018). Here, by contrast—and as the Government persuasively points out—Alldredge received three such benefits. Opposition at 6-7. First, by offering a guilty plea to the superseding Information, the Government changed Alldredge's charge from a money-laundering conspiracy in violation of 18 U.S.C. § 1956(h) to one in violation of 18 U.S.C. § 371, reducing his sentencing exposure from twenty years to five years in prison. *Compare* 18 U.S.C.

§ 1956(a), *with id.* § 371. Second, the Guidelines offense level for a conviction under Section 371 was four points lower than it arguably would have been for a conviction under Section 1956—given the inapplicability of two separate two-point enhancements to a Section 371 offense—which "reduced the Guidelines sentencing range to 30-to-37 months, rather than 46-to-57 months." Opposition at 6; *see* U.S.S.G. § 2S1.1(b)(2)(B) (two-level increase "[i]f the defendant was convicted under 18 U.S.C. § 1956"); *id.* § 2S1.1(b)(3) (two-level increase where subsection (b)(2)(B) applies and "the offense involved sophisticated laundering"). And third, the Government agreed to not seek forfeiture of the precious metals seized from Alldredge's safety-deposit box. *Compare* Indictment ¶ 4, *with* Information ¶ 4. Alldredge "undoubtedly secured considerable benefits from his agreement," *United States v. Rosa*, 123 F.3d 94, 101 (2d Cir. 1997), and thus, having "secured the benefits of a plea agreement and knowingly and voluntarily waived the right" to collaterally attack his sentence, Alldredge should be held to his end of the Plea Agreement, *United States v. Salcido-Contreras,* 990 F.2d 51, 53 (2d Cir. 1993). In other words, "[a]llowing [Alldredge] to secure the benefits of the plea agreement while disclaiming its burdens would undermine the purpose of the plea-bargaining process." *United States v. Jones,* 100 F.4th 103, 110 (2d Cir. 2024).

There is good reason why defendants lack the "right to bring a collateral attack when, in exchange for valid consideration, they executed binding plea agreements admitting their criminal conduct and waiving their ability to challenge the resulting convictions" and sentence. *Cook*, 84 F.4th at 125. Were it otherwise, "the plea bargaining process and the resulting agreement" would be rendered "meaningless." *Salcido-Contreras*, 990 F.2d at 53. But "plea agreements can have extremely valuable benefits to both sides—most notably, the defendant gains reasonable certainty as to the extent of his liability and punishment, and the Government achieves a conviction without

the expense and effort of proving the charges at trial beyond a reasonable doubt." *Rosa*, 123 F.3d at 97; *see generally Blackledge v. Allison*, 431 U.S. 63, 71-72 (1977). For this reason, "[s]uch waivers must be enforced" when they fall outside the "very circumscribed" "exceptions to the presumption of enforceability." *Cook*, 84 F.4th at 122 (internal quotation marks omitted).

At bottom, where, as here, "the waiver itself is clear, unambiguous, knowingly and voluntarily entered, and supported by consideration—[like] the government's agreement not to pursue charges or arguments that could have resulted in a much higher sentence—the terms of the plea agreement[] must be enforced." *Id.* at 125. Alldredge's Section 2255 motion is dismissed for that reason alone. *See, e.g.*, *Sanford*, 841 F.3d at 581 ("[The defendant's] collateral attack waiver therefore bars the present [Section 2255] motion because the waiver encompasses any challenge to his sentence.").

**B. Alldredge's Claims All Fail on the Merits.**

Even were the Court to consider each of Alldredge's waived claims—which it need not—none would persuade.

**1. Ground One: Violation of Alldredge's Fourth, Fifth, and Sixth Amendment Rights**

Alldredge first claims that he is "being held in violation of the Constitution . . . due to the unlawful search and seizure of [his] cell phones and private lock box, as well as the reliance on improperly obtained evidence and coerced statements during questioning." Motion at 15-16 (alleging that "[t]hese actions violate[d] [his] Fourth, Fifth, and Sixth Amendment rights"). This claim is squarely foreclosed by Alldredge's guilty plea. As the Supreme Court has long explained, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollet v.*

*Henderson*, 411 U.S. 258, 267 (1973); *accord Menna v. New York*, 423 U.S. 61, 62 n.2 (1975). Said otherwise, "a guilty plea conclusively establishes the factual predicate for the offense to which the defendant is pleading guilty," meaning that "on collateral attack of a judgment of conviction," a *habeas* "petitioner may not assert pre-plea constitutional violations bearing on the valid establishment of his factual guilt." *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006) (*per curiam*). So too here. Indeed, during the allocution, Alldredge acknowledged that by pleading guilty he would be "giving up [his] right to seek suppression of any of the evidence against [him]." Plea Tr. at 14:4-13. Having knowingly and voluntarily pleaded guilty, he cannot now challenge his conviction by raising pre-plea constitutional violations. *See Gregg*, 463 F.3d at 164 (explaining that a guilty plea "conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue").

Alldredge also argues that "the prosecution's reliance on this unconstitutional evidence contributed to sentencing errors, resulting in an inflated sentencing guideline range and an unjust sentence." Motion at 15. But that argument fails, too. Under Second Circuit precedent, "district judges normally should consider illegally seized evidence at sentencing," and may refuse to consider such evidence only upon "a showing that officers obtained evidence expressly to enhance a sentence." *United States v. Tejada*, 956 F.2d 1256, 1263 (2d Cir. 1992). Even assuming that the Government's evidence was unlawfully obtained,[5] Alldredge makes no effort to show that the "evidence was seized expressly for the improper purpose of influencing the sentencing judge." *Id.* Nor could he: as the Government points out, the evidence in question was collected "more than

[5] The Government disputes that Alldredge's "rights were violated" as to "the search of his cellphones and his interview with federal agents," although it concedes that the evidence seized from his safety-deposit box was unlawfully obtained. Opposition at 14 & n.3 (citing *Snitko v. United States*, 90 F.4th 1250 (9th Cir. 2024)).

two years before he was arrested"—and thus three years before his sentencing—and the Government conceded that if the case had proceeded to trial, it "would not have introduced" the sole category of evidence that was undisputedly seized illegally. Opposition at 14 & n.3. Alldredge's claim that the Court improperly considered illegally seized evidence at sentencing thus falls short.

**2. Ground Two: Prosecutorial Misconduct—Bad Faith Negotiations and Coercion**

Alldredge further claims that the "prosecution engaged in bad faith plea deal negotiations by intentionally conditioning the continuation of negotiations on not having to turn over critical discovery documents." Motion at 19-20. According to Alldredge, such withholding—which was "compounded by threats of escalating charges and severe penalties"—"pressured [him] into making an uninformed decision to accept the plea deal." *Id.* at 19.

First, there is no bad faith in requiring a defendant to waive his right to Rule 16 discovery in order to plead guilty. "Of course, the more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that decision will likely be. But the Constitution does not require the prosecutor to share all useful information with the defendant." *United States v. Ruiz*, 536 U.S. 622, 629 (2002). It has thus long been standard practice to include a discovery waiver in plea agreements. *See, e.g.*, *United States v. Barreras*, 494 F. App'x 115, 118 n.1 (2d Cir. 2012) (summary order); *United States v. Nicholas*, No. 20 Cr. 224 (PMH), 2025 WL 744023, at *2 (S.D.N.Y. Mar. 7, 2025); *Bonfiglio v. United States*, No. 03 Civ. 2983 (DLC), 2003 WL 23096513, at *5 (S.D.N.Y. Dec. 31, 2003). And here, the Plea Agreement specified that Alldredge could still seek to withdraw his plea or challenge it based on the Government's failure to produce "any information establishing [his] factual innocence." Plea Agreement at 5. The inclusion of that important "guilty-plea safeguard[]" shows that the

Agreement was far from bad faith. *Ruiz*, 536 U.S. at 631 (explaining that the inclusion of similar language in a plea agreement "diminishes the force of [the defendant's] concern that . . . innocent individuals, accused of crimes, will plead guilty"); *see also* Opposition at 16 (explaining that "[d]espite this waiver, some discovery was produced").

Second, there is nothing wrongfully coercive about escalating charges and severe penalties. As an initial matter, it is a basic tenet of the plea-negotiation process that "'additional' charges may be used to induce a defendant to plead guilty," whether those "'additional' charges were obtained in the original indictment or merely threatened in plea negotiations and obtained once those negotiations broke down." *United States v. Goodwin*, 457 U.S. 368, 372-80 & 378 n.10 (1982) (emphasis omitted); *see also Bordenkircher v. Hayes*, 434 U.S. 357 (1978). And here, that plainly legitimate practice did not even occur, as the original Indictment included a *more punitive* charge and forfeiture allegation than the superseding Information to which Alldredge pleaded guilty. *Compare* Indictment (charging conspiracy to commit money laundering under 18 U.S.C. § 1956(h), which carried a maximum penalty of twenty years, and including the safety-deposit box's precious metals in the forfeiture allegation), *with* Information (charging conspiracy to commit money laundering under 18 U.S.C. § 371, which carried a maximum penalty of five years, and excluding the safety-deposit box's precious metals in the forfeiture allegation). The prosecution's common and permissible conduct in seeking to persuade Alldredge to plead guilty provides no ground to alter his sentence.

**3. Ground Three: Prosecutorial Misconduct—Overzealous Prosecution, Overcharging, and Misrepresentation**

Finally, Alldredge asserts that the "prosecution's decision to charge [him] with conspiracy to commit money laundering under 18 U.S.C. § 371 was fundamentally flawed and represents overzealous prosecution" because the "essential elements required for a conspiracy charge—

namely, an agreement between two or more individuals—were entirely absent." Motion at 22-23. His support for that assertion is that he was "the only person charged in the indictment, and no evidence was presented of any co-defendant(s) or an agreement between [him] and another party to engage in criminal activity." *Id.* at 22. To the extent that Alldredge argues that he could not have committed conspiracy because his co-conspirators were not also charged, such an argument finds no support in the law. And besides, any claim that his charge lacked "factual support," Motion at 7, is completely undercut by his admission of the crime under oath in open court, *see* Plea Tr. at 29:25-30:16 (admitting to having "agreed with another person to conduct a financial transaction involving funds [he] understood to be proceeds of unlawful activity" and having "engage[d] in this activity with others who were also involved in the same scheme"). A "counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case." *Menna*, 423 U.S. at 62 n.2; *see also Juncal*, 245 F.3d at 171 (noting an allocution's "strong presumption of accuracy"). The "factual predicate" of Alldredge's participation in a conspiracy to commit money laundering was "conclusively establishe[d]" by his admission of guilt. *Gregg*, 463 F.3d at 164.

* * *

Having received substantial benefits—in terms of both possible time in prison and amount of forfeiture—from pleading guilty, Alldredge cannot now disclaim the associated burdens in doing so, whether because of his collateral-attack waiver or because his claims simply fail on the merits.

## IV. Conclusion

For the above reasons, Alldredge's motion under Section 2255 is denied. The Clerk of Court is respectfully directed to terminate the motion at Docket Number 36, and to close case

number 25 Civ. 1261 (JPC). The Clerk of Court is also respectfully directed to send a copy of this Opinion and Order to Alldredge at FCI Lompoc II Satellite Camp, 3705 W. Farm Road, Lompoc, CA 93436. A certificate of appealability shall not issue because Alldredge has not made a substantial showing of a denial of a federal right. *See Hoffler v. Bezio*, 726 F.3d 144, 154 (2d Cir. 2013); 28 U.S.C. § 2253(c)(2). The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444–45 (1962) (holding that an appellant demonstrates good faith when seeking review of a nonfrivolous issue).

    SO ORDERED.

Dated: October 14, 2025
      New York, New York

                                     JOHN P. CRONAN
                                United States District Judge